THE JERSEY LAND COMPANY, complainant-appellee,

*v.*

ABRAHAM GOLDBLATT et al., defendants;

LOUIS J. PLATT, HARRY GREENBERG, defendants-appellants.

[Submitted October 30th, 1928. Decided May 20th, 1929.]

*Mr. Charles Jones,* for the complainant-appellee.

*Mr. Louis J. Platt* and *Mr. Abraham Henig,* for the defendants-appellants.

The opinion of the court was delivered by

MCGLENNON, J.

Complainant filed a bill, in the court of chancery, on May 5th, 1928, to foreclose its mortgage of $122,250, covering premises known as 10-16 Osborne Terrace, in the city of Newark, upon which there was erected a large apartment house, and subsequent mortgagees, mechanics' lien claimants, and judgment creditors were made defendants.

Various answers and counter-claims were filed, particularly by appellants, setting up dispute as to amount due complain-

ant, and charging fraudulent conspiracy to defeat creditors, and alleging full payment, and wrongful refusal to cancel the mortgage, all of which complainant has denied.

In this situation, complainant filed its petition in June, 1928, praying that the lands and premises herewith be sold *pendente lite*. The affidavits supporting the petition show that a large four-story apartment house had been erected thereon. It contained about one hundred and sixty rooms. That some of these apartments, eighteen in number, were not completed and ready for tenants. That the plumbing work and the heating system in the said building were not completed, and were in need of connection and repair. That the frigidaires and the oil burners, the elevator. and gas ranges in the buildng, had been sold under conditional bill of sale, and agreements under the same were falling due. That installments due on the building and loan mortgage, of about $3,000 per month, were in arrears, and foreclosure was threatened thereunder. The affidavits further show that the total amount of liens was in excess of the value of the property, to the extent of about $100,000. That the receiver of rents, had little or insufficient money to do the necessary work and repairs, or pay the superintendent and other employes. The affidavits also showed that the current income was insufficient to pay for these charges, as well as the payments of installments required to be met, in order to prevent the removal of equipment that was installed under the conditional sales agreement. The affidavits further recite that present tenants were complaining about the unfinished condition of the building, and about the rain beating in through the walls, and threatening to leave, which condition would give the house a bad name, thereby lessening its rental value. That the litigation was not likely to be determined for a year or more, and there was no interested party able or willing to advance funds necessary for maintenance during the interim, and that a present sale of the property would be of advantage to all parties concerned.

Defendant-appellants' answering affidavits minimized the petitioner's claim, as to the actual condition of the premises,

as well as to the extent and cost of the work necessary for completion and repair. They deny that considerable such work is required, but admit that there are existing vacancies, claiming that these are the result of a slow renting season, and not occasioned or influenced by what claimant avers. As to the building and loan mortgage, one of the defendant's affidavits shows there was an arrangement for a compromise in this matter and the building and loan, he thought, could be induced to forebear a foreclosure, until the equities and priorities had been determined. As to the removal of equipment, it is further claimed that the conditional sale vendors of these equipments are estopped from removing their equipment as against the first mortgagee. The affidavit further states that the receiver expects to have sufficient funds to meet the installments for the refrigerators, elevator and gas ranges. The affidavits are silent on the matter of the total liens exceeding the value of the property, and it does not appear that any person was willing to advance the money required, during the time likely to elapse, before there could be a determination of the issues involved.

On June 30th, 1928, the court after considering the foregoing proofs, made an order for public sale of the premises by a receiver, reciting "that the court was satisfied that the mortgaged lands and premises and building, particularly described in the bill of complaint and petition on file herein, are liable to deteriorate largely in value pending the suit, and that its care and preservation pending the litigation herein would entail great expense, and that a sale thereof should be made before the termination of this suit."

As a result of this order, the property in question was duly advertised for sale. Defendant-appellant attended the sale, did not object to the procedure, did not suggest an adjournment, but did take an active part in the sale. The premises were duly sold, the sale was confirmed, and about a week or so later, this appeal was taken.

The only grounds of appeal argued are that;

(a) The court did not have jurisdiction to make this order.

(b) The evidence before the court did not show that the

property is of such character or so situated as to make it liable to deteriorate in value, pending the suit, or to make its care or preservation difficult or expensive.

Appellants concede that the court has power, under section 62, of the Chancery act, to. order such a sale, *pendente lite,* when it appears either that the property is of such a character, or so situated, as to make it liable to deteriorate in value, pending suit, or that its care and preservation will be difficult or expensive. They contend however, that the circumstances and condition of this particular property did not bring it within the statute, and hence the court of chancery had no jurisdiction.

Our reading of the proofs submitted, duly justified the conclusion of the learned vice-chancellor, and we therefore agree with him that the mortgaged property was of such a character as to make it liable to deteriorate largely in value, pending the suit, and to make its care during that period expensive. Moreover, the statute clearly gives the court discretionary power to. make such an order, when satisfied that either of the prescribed conditions existed. In this order, therefore, we see no abuse of discretion.

We doubt, moreover, the propriety of permitting the mortgagor to sit by and allow the property to be sold, without any suggestion that the order for sale was not justified by the facts shown to exist, and then attack the order for sale on the ground that in making it the court was guilty of an abuse of discretion.

We conclude, therefore, that the proofs submitted to the court below, showing the special financial and physical condition of this property, were amply sufficient to sustain its judgment.

The order of sale appealed from is therefore affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 13.

*For reversal*—None.